It's also become a reason why I fly, not the day before, but the day before that, just in case I have problems and don't show up. If it may please the court, I'm Robert Newcomb, and I represent the state of... Oh, I'm sorry, I've got to switch my book around. Okay, you've got everything in order like it should have been. Tell me when the court's ready. You were supposed to be the other guy. I couldn't answer their questions, Judge Loken. Never know. Never know. If it may please the court, I'm Robert Newcomb, and I represent the state of Mrs. Frederick, who was shot and killed by a Rogers police officer after an encounter with two others. The theory of the case, and I think it was not completely recognized by the district court, was not that the shooting, the pulling of the trigger to get it to the very instance, was unnecessary. I will concede that the person coming toward the officers at that moment with a knife posed a threat to them. The issue backs up of whether what we contend was the unnecessary and unlawful use of the taser against Mrs. Frederick. The theory is a proximate cause and foreseeability, which was uncertain in this circuit at the time it was decided below and was, up until the end of May, possibly a debatable issue. I've sent, I think it's under Rule 28, I sent the court the Los Angeles County v. Mendez case from the United States Supreme Court on May 30th, and that court remanded the case back to the Court of Appeals, because it recognized that damages for the wrongful death could be recovered if the wrongful death was proximately caused by another Fourth Amendment seizure or act, and it resulted in and was foreseeable that the use of deadly force did happen. That was the Ninth Circuit analysis that was reversed. Well, the court didn't, I think, I disagree with Your Honor. I thought Mendez clearly said that if the excessive force itself was not unreasonable, then you cannot recover on the excessive, on that claim for excessive force, just because there was a preceding Fourth Amendment violation. If I, if the court will indulge me just a minute. The court said that, saying that the resulting, the second act, I'm going to call it, let's say the shooting in this case, you can't recover on the liability for that act. You can recover for damages caused by that act if it was proximately caused by a violation of the Fourth Amendment. Well, now you're saying your theory on appeal, forget the shooting, except as to the extent of damages, focus on the tasing. It was pled as an unnecessary use of force in the complaint that the tasing was. It was, you know, argued that it was an unlawful use of force. It was pointed out that all of the officers recognized that if the tasing was unsuccessful, that they would likely have to use deadly force to resolve the situation. May I grab some water, Your Honor? Sure. I get a quicker dry mouth because of some radiation treatment I've had in the past. The court in Mendez remanded it because the Ninth Circuit did not focus on the tort theories of proximate cause and foreseeability. It says that this is just a Westlaw, Your Honor, and I think it starts on page 8 of it. We'll read it. I didn't bring it with me. I read it before it came. Okay. But I contend that it's at the end of the opinion in Section 3 where they talk about, you know, was it proximately caused? Well, we look at the officers all admit that she had not made any verbal threats to anyone at the time of the tasing, that she had made no movements threatening the officers. The other cases where the court has upheld tasing? Well, I'm just looking at what the district court said about the tasing. The district court, early in the opinion, it recognizes that both the tasing and the shooting were claimed to be excess force. But I thought the court then substantive ruled on the merits of the tasing claim, in which case we don't ever reach proximate cause for damages if the tasing was not. Or if there's qualified immunity. I do not argue with the court that if the tasing is found not to be excessive force, that the tasing is measured, I believe, under the traditional Graham v. Connor factors, which this court most recently, in Tatum v. Robinson, identified. And I know Judge Locum was on that panel and I believe descended from parts of it. But the court recognized that you have sort of three parts, none of them outweighing the other or being dispositive completely. The first would be what crimes had been committed that needed the intervention of force. Well, it doesn't have to be a crime. We've upheld tasings of people who post arrest, who resisted further detention. And that would be the resisting, and it's maybe splitting hairs. Still resisting after arrest is a, at least in Arkansas criminal law, would be resisting arrest. As Judge Locum pointed out where somebody's told they're under arrest and they are being handcuffed and are fighting. You know, not submitting to the handcuffs or by having to keep, not putting their arms back, resisting it being put back. So she, the officers say that what she may have committed at that point in time when she was tased was disorderly conduct and public intoxication. Both of them nonviolent misdemeanors under Arkansas law. The citations to the statute are in the brief. The penalty on the one of them is up to a year in the county jail. And at that time, a $1,000 fine. They've now increased the fines. Public intox is a Class C misdemeanor, which is a 30-day jail sentence. Very minor nonviolent. She was not trying to flee, and she had not been ever told she was under arrest. She was told to, by Clifton when he came in the store, that, to drop the knife. The possession of the knife under Arkansas law was not illegal. But the district court recognized, you cited a Ninth Circuit case, I'm looking at opinions. Washington County. And the court says this case is worlds apart. That was an innocent bystander. Ms. Frederick was in a public commercial place armed with a knife and in close proximity to the officers and two restrooms. This is exactly the type of tense, uncertain, and rapidly involving situation that justifies the use of force when a suspect poses an immediate threat to safety. And then he concludes Officer Targelson's attempt to tase Ms. Frederick did not constitute excessive force. And did not violate the Fourth Amendment prohibition against unreasonable seizures. The court having determined that when Officer Clifton drew his weapon and basically said freeze, Ms. Frederick was detained, seized. And so we're talking about post-seizure excessive force by a suspect, if you will, of something, that who is not obeying commands and is perceived as threatening. Well, is it reasonable to perceive her as threatening when she has made no verbal argument that she was going to harm anyone? Had the customer fled the store? Didn't the store clerk refuse her request that the store clerk call 911 because the clerk saw the knife and said you do it yourself and backed away? No, she had come in asking to use the phone to call about the delusion that she was being followed. It was not the phone calls to the police. There's no question that she then, when Officer Clifton came, she backed into a corner and held the knife. She was already in that corner before Officer Clifton ever arrived. She had gone to that corner. All the officers ordered her to drop the knife repeatedly. Is that not undisputed? It is undisputed. And the district judge did a very good job of outlining the time from the two officers. First, at some point Clifton told her. Secondly, when Torkelson got to the end of the aisle, they told her again she'd be tased and drop the knife. And six seconds later, they tased her. They attempted to. They attempted to, but it was still like firing the tase. She was anticipating tasing, as I understand the record, and moving her purse around. And they successfully deflected one of the darts, so she wasn't tased, which permitted her to continue to attack more threateningly. You could argue, Your Honor, as a result of it, she had a reaction to run, to get away. Because one of the prongs did hit her in the chest. And they all said that she let out a yell at the time the taser hit her. So, you know, was it reasonable to tase her when they also knew that there was a reasonable chance, and Torkelson admitted it, that with her moving the purse, it was going to be unsuccessful. So they created a situation where deadly force was going to be used. If I may reserve my time. Mr. Wilkerson. Good morning. May it please the Court. Admittedly, with the appellant's concession that the shooting itself was reasonable, and, of course, the Mendez case from the Supreme Court last month, my argument, of course, is very limited. Right now, it looks like we're really only debating whether the tasing itself was reasonable. And as Judge Brooks pointed out. Well, I just filed an opinion last week involving tasing. We're seeing these cases all the time. Yes. So don't dismiss this lightly. No, no, I will not. Trust me, Your Honor, I assure you of that. As Judge Brooks correctly noted, this wasn't the same situation as Blondin, the Ninth Circuit case that Mr. Newcomb relies upon, or Brown, the Eighth Circuit case that Mr. Newcomb relies upon, because in Blondin, both individuals, both in Blondin and in Brown, were unarmed. In fact, in Brown, the Eighth. You'd have to. We've read, you know. Okay. Get to the crux of it. She was in a public place. Don't set up the straw men and set them on fire. Fair enough. She was in a public place. She had a knife. When police officers arrived, she refused to drop the knife. It happened quickly, yet it didn't happen in seconds. It happened in close to two minutes. The store clerk, as you pointed out, was scared. She was asked when Ms. Frederick entered the store, she asked to use the phone for the 911. You can tell by the tape. The clerk gives her the phone. Ms. Frederick then asks the clerk whether she can use the clerk's cell phone. The clerk says no, backs away, and then the knife, of course, is coming out or has been out the whole time. Then Ms. Frederick flips it open. The store clerk says that she's scared of Ms. Frederick's actions. The store clerk says that she was frightened that Ms. Frederick would have. She was frightened. That's it. It goes without saying, I guess, that she said she was scared. And considering that Ms. Frederick had a knife, was in a public facility or a public place, she was near bathroom doors, which may, to some people, think not to be a big deal, but when you're a police officer, you always have to worry about every possible scenario, or at least as many as you can try to. In this scenario, they didn't know if anybody was in the bathrooms. And Judge Brooks pointed that out correctly, too. So considering that Ms. Frederick had a knife, was refusing to drop it, was acting the way she was acting, and it's all in the video. No need to describe it because the video does it for us. And that not only the three officers, but the store clerk was fearful of what was going to happen. It's reasonable to tase Ms. Frederick in that situation. Now, Mr. Newcomb brings up the Tatum case. I think that's the case you're referring to, Judge Logan, which was just last month. No, there's a more recent one. Oh, then I guess I missed it. I have you at a disadvantage, but there is one. Okay, all right. This month, I think. Let's talk about Tatum. In Tatum, the young man, or I presume he's a young man, was stealing shoes from the dealers. Tries to walk out of the store. The security camera catches him. The security guard catches him, locks the doors, puts down the shoes. An off-duty officer working security there catches up to Mr. Tatum. And as Mr. Tatum puts it, they all agree that they're arguing. Mr. Tatum, of course, says that he was pepper-sprayed for no good reason and then choked and taken to the back and choked some more and all those things. But this court, in that case, said one thing that's important for this, which as a civil rights lawyer in this kind of work, I'm glad that this is finally done, is that pepper-spray and tasing are the same, or it was put more definitively. And so we can just use Tatum for this purposes because it's essentially a tasing case because the equation was made. Stun mode or dart mode? Did we equate them? It just said tasing. Fair enough. It just said tasing. Fair enough. Excellent. Excellent point. I would say a stun mode and pepper spray are similar. I'm not sure about dart mode. I'm at a severe disadvantage. You're right. I didn't think about that. All right. Fair enough. Regardless, this, of course, is a dart mode. But going back to Tatum, this court said that his actions, the officer's actions in pepper spray Mr. Tatum was unreasonable. But then the court said something that's important for this case. Let's just assume that the tasing in this case is unreasonable, which, of course, we vociferously deny. But this court said Tatum's right to be free from the use of pepper spray under these facts was not sufficiently definite. A reasonable officer in Robinson's shoes could have believed he was not violating Tatum's right by pepper spraying him because Tatum was angrily arguing and was warned before the pepper spray was used. So in that case, the officer was given qualified immunity. To me, and obviously I'm here to argue this point, the same can be said here, that if it's not clear that you can't pepper spray an individual who's angrily arguing and refusing to comply or angrily arguing and giving a warning, then you certainly can't find Officer Torkelson liable because he tased a woman who had a knife in her hand in a public place after he warned her that I will use this taser if you do not drop the knife. So based on the facts of this case and based on the fact that the appellant can't point to any case that establishes that Officer Torkelson's actions were unreasonable, we believe that Judge Brooks' order should be affirmed. And I have nine minutes, but that's my argument. If you have any questions, I'd be glad to answer them. There wasn't a Monell? There must be a Monell claim here. The appellant dropped it at the summary judgment stage. So with respect to the federal claims, qualified immunity is the issue? Yes, Your Honor. Thank you. Mr. Newcomb? A little over two minutes, Your Honor. Yes, Your Honor, I'll confirm that it's in Judge Brooks' opinion that he granted the request to dismiss the city. And it just states in the style here, because that was the style in district court, so it is a claim only against the three individual officers. So the qualified immunity, now as far as the case goes, Your Honor, the Glenn v. Washington case that's in the brief found that there was no qualified immunity when a beanbag gun was used with the person holding a knife, not trying to get away, and didn't respond to orders to drop the knife for three minutes before he was beanbagged. What our expert witnesses said, it was unreasonable, and the Ninth Circuit also said that where the experts in the Glenn case said that the use of the beanbag gun in that situation was unreasonable from an officer's point of view, I think creates a question of fact of whether it was objectively reasonable to use it that quickly with that. And as this court said, I think it's in the reader. Well, what's your response to the argument that even if we assume that they should have waited longer, that it was not clearly established under this situation? What's the closest case from our circuit would put an officer on reasonable notice that this was illegal conduct? I think the reader case talks about it. The facts of the other cases where the taser was used with a knife situation, in all of those, some of them where they granted summary judgment on qualified immunity, was that the person had made an overt movement toward the officers with the knife. See, I'm out of time. Thank you, Your Honor. Very good. Thank you, Counsel. Mr. Newsom, I appreciate your sending them in this case. I had that morning seen a squib about it, so I found it, but I often would have missed it. Well, it doesn't help you, and that's why it was even more professional to get to our attention. Yeah, I thought it sort of cut both ways from my argument. I won't concede it didn't help me. We'll sort that out. Yeah, you can sort that out, but I know I'm running over. But at least it made it clearer to me as a lawyer of 42, 43 years that's litigated in civil rights that you can take even more of the theories of torts into your 1983 type actions. I know they've done it with damages and some others, but I don't know if they ever said anything before as clear as Mendes. Thank you, Your Honor. Thank you. Thank you, Counsel.